UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Cr. No. 16-20222

        v.        District Judge Arthur J. Tarnow

ELLIOTT COTTON,

        Defendant.
_____/

**SUPPLEMENTAL BRIEF
IN SUPPORT OF PETITION FOR COMPASSIONATE RELEASE**

    This Court is by now well aware of the dangers of the COVID-19 pandemic and the extraordinary and compelling reasons for release it creates. In fact, this Court has granted compassionate release on that basis to three of Elliott Cottons's co-defendants in this case. (*See* R. 385, Order Releasing Ronald Miller; R. 414, Order Releasing Ramel Howard; R. 425, Order Releasing Jeffrey Snell.)

    Elliott Cotton's situation warrants the same relief. Cotton is a 64-year-old army veteran who suffers conditions that place him at risk of COVID-19, including asthma, obesity, hypercholesterolemia, and prediabetes. He is housed at FCI Morgantown, the same prison from which this Court released co-defendant Ramel Howard. Cotton had a criminal history of zero at sentencing, and was designated as

1

being on the lowest level of the drug conspiracy (couriers/bag men). He has had zero disciplinary issues in prison. He also has a "minimum" risk PATTERN score, and he has engaged in several programs, including courses addressing re-entry skills and programming aimed at veterans.

Because of his serious health issues, and the risk to him because of the COVID-19 pandemic, Cotton asks this Court for immediate release under 18 U.S.C. § 3582(c)(1)(a).

## I.     Procedural history

Federal authorities arrested Cotton in April 2016, in relation to crimes occurring through 2014, six years ago. PSR ¶¶ 1, 3. After initially being temporarily detained, he was released on bond on April 11, 2016. PSR ¶ 4.

In July 2017, Cotton pleaded guilty to one count of possession with intent to distribute 500 grams or more of cocaine and one count of conspiracy to launder money. PSR ¶ 8. Cotton admitted to paying to ship drugs and depositing money on behalf of his codefendants. (R. 268, Plea Agreement, PgID 1201-02.)

The parties anticipated Cotton would be eligible for relief under the safety valve. (R. 343, Gov. Sent. Mem., PgID 1836.) But he declined to proffer and thus this Court was forced to impose a five-year mandatory minimum.

2

At the time of sentencing, the presentence report documented several health problems. Cotton's medical issues were severe enough that the Veterans Administration provided him with disability benefits. PSR ¶ 59. Cotton received treatment at the Veterans Center in Detroit for "gout, asthma, and chronic kidney disease (stage two)." PSR ¶ 47. He also "was hospitalized in August 2017, for three days for atypical chest pain." *Id.* He was prescribed aspirin, atorvastatin (for heart issues), omeprazole (for heartburn); albuterol (for asthma); mometasone furoate (for asthma), and other medications for gout. PSR ¶ 48.

This Court imposed the mandatory minimum term of five years. At the time of sentencing, pretrial services indicated Cotton "generally complied with all Court ordered conditions of release." PSR ¶ 9. He thus complied with supervision conditions for more than two years.

On June 5, 2020, this Court docketed a letter by Cotton requesting compassionate release under 18 U.S.C. § 3582(c) because of his risk of serious illness from COVID-19 as a result of his age, and health problems, including asthma, heart issues related to high cholesterol, gout, and glaucoma. (R. 429-1, Pro Se Request.) He provided a release address, at his daughter's house, and explained his plan to continue working in construction and receiving veterans' benefits. (*Id.*)

3

## II.     Legal Standard for Compassionate Release

In December 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A)(i), to permit sentencing judges to grant a reduction of sentence, after considering the § 3553(a) factors, if the Court finds "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."

Release in these circumstances is consistent with the Sentencing Commission's policy statements. Specifically, Cotton suffers "a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A)(ii); *see United States v. Rahim,* No. 16-20433, 2020 WL 2604857, at *2 (E.D. Mich. May 21, 2020). Moreover, there are "Other Reasons" under U.S.S.G. § 1B1.13, cmt. n. 1(D), warranting compassionate release, because prison populations are subject to heightened vulnerability to the virus. *See Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020); *see also United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241 (S.D. Miss. May 1, 2020) (granting release to a non-elderly inmate with no pre-existing conditions because of BOP's failure to control the outbreak at his facility).

### III. **Exhaustion of Administrative Remedies**

Section 3582(c)(1)(A)(i) gives this Court authority to grant relief to a person moving for compassionate release after *either* (1) he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." The Sixth Circuit clarified on June 2, 2020, that this requirement, if asserted by the government, is mandatory. Cotton requested compassionate release on May 25, 2020, so this Court may grant relief on June 25, 2020. (Ex. 3, Admin. Requests.)

### IV. **Extraordinary and Compelling Reasons for Release**

Cotton's incarcerated status alone puts him at a higher risk of contracting COVID-19. As of today, 6,104 inmates in the Bureau of Prisons have contracted COVID-19, and although more than 4,000 have recovered, at least 80 inmates have died. https://www.bop.gov/coronavirus/.

This Court has already considered the conditions at FCI Morgantown in granting relief in *Howard v. United States*, No. 16-CR-20222-2, 2020 WL 2615509, at *2 (E.D. Mich. May 22, 2020), and *United States v. Doshi*, No. 13-CR-20349, 2020 WL 2556794, at *3 (E.D. Mich. May 20, 2020). Judge Hood further detailed the conditions at the prison in *United States v. Pomante*, No. 19-20316, 2020 WL

5

2513095, at *4 (E.D. Mich. May 15, 2020). She explained that "[u]ntil the BOP increases its testing capacity, a lack of confirmed cases has very little bearing on the amount of actual cases in a federal prison." *Id.* (citing Sadie Gurman, *More Than 70% of Inmates Tested in Federal Prisons Have Coronavirus*, The Wall Street Journal (Apr. 30, 2020), https://www.wsj.com/articles/more-than-70-of-inmates-tested-infederalprisons-have-coronavirus-11588252023). Further, as of June 11, 2020, Monongalia County, where FCI Morgantown is located, has 129 cases of COVID-19, and an additional 14 probable cases. *See* COVID-19, monchd.org, https://www.monchd.org/covid-19.html. As Judge Hood explained, "absent zero cases in Monongalia County the prison is still at risk of exposing inmates." *Pomante*, 2020 WL 2513095, at *4. "Presumably, many of FCI Morgantown's staff live in Monongalia County and may have been exposed to COVID-19." *Id.*

Further, Cotton is at a particular risk of death or serious illness if he contracts COVID-19 for five physical conditions, especially when viewed in combination:

***One: Obesity.*** Cotton is also at risk from COVID-19 because of his obesity. As last measured, his BMI is 32.3, and a BMI over 30 places a person in the category of "obese." The CDC initially listed people with a BMI over 40 as particularly at a higher risk for COVID-19. But new research on the virus widens that medical understanding. Recent medical data shows that people like Cotton who are obese

6

with lower BMIs are also at increased risk. As Judge Parker recently noted, medical experts have opined "that the CDC's list of conditions is incomplete." *Cameron v. Bouchard,* No. 20-10949, 2020 WL 2569868, at *5 (E.D. Mich. May 21, 2020). In particular, people with "less than 'severe obesity' . . . face a higher risk of experiencing severe COVID-19 outcomes." *Id.* Specifically, even individuals less than 60 years old, with a BMI between 30 and 34, are twice as likely to need acute medical care related to COVID-19 than those with a BMI less than 30. Jennifer Lighter, et al., *Obesity in Patients Younger Than 60 Years Is a Risk Factor for COVID-19 Hospital Admission*, Clinical Infectious Diseases (2020), https://academic.oup.com/cid/advance-article/doi/10.1093/cid/ciaa415/5818333. "Obesity can restrict ventilation by impeding diaphragm excursion, impairs immune responses to viral infection, is pro-inflammatory, and induces diabetes and oxidant stress to adversely affect cardiovascular function." David A. Kass, et al., *Obesity could shift severe COVID-19 disease to younger ages*, The Lancet (May 16, 2020), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)31024-2/fulltext#%20 (finding correlation between obesity and worse outcomes for individuals who contract COVID-19).

***Two: Hyperlipidemia.*** Cotton also suffers hyperlipidemia—chronic levels of high cholesterol in his blood—and he has suffered from this condition essentially

7

his entire time in BOP custody. (Ex. 4, Medical Problems List.) He takes two daily medications for this condition, aspirin and atorvastatin. The CDC recognizes that people with serious heart conditions are at risk of severe illness from COVID-19. CDC, COVID-19, *People At Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Statistics from New York public health authorities, which keep detailed records of comorbidities, reveal that hyperlipidemia is the third leading comorbidity in COVID-19 deaths, behind only hypertension and diabetes. N.Y. Tracker, https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?%3Aembed=yes&%3Atoolbar=no.

Other courts have cited this ailment when granting release in other cases. *United States v. Diep Thi Vo*, No. 15-CR-00310-BLF-2, 2020 WL 2300101, at *3 (N.D. Cal. May 7, 2020) (granting release to 74-year-old with hyperlipidemia and hypertension); *United States v. Pena*, No. 15-cr-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) (granting release to 60-year-old suffering from hypertension and hyperlipidemia). One court noted the data New York State Department of Health reflecting that 21% of all COVID-19 fatalities had hyperlipidemia. *United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585, at *8 (W.D. Pa. May 29, 2020).

8

***Three: Prediabetes.*** Cotton also suffers prediabetes, which is diagnosed when a person's blood sugar level is higher than it should be but not high enough for to diagnose diabetes. The CDC recognizes diabetics as people at a high risk of death or serious illness from COVID-19. CDC, *At Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Courts thus have found that prediabetes also places incarcerated people at a higher risk from COVID-19. *See United States v. Sosa*, No. 19-CR-39-02-JD, 2020 WL 2227038, at *1 (D.N.H. Apr. 21, 2020), *report and recommendation adopted,* No. 19-CR-39-02-JD, 2020 WL 2219173 (D.N.H. May 6, 2020) (finding prediabetes and obesity warranted pre-sentencing release); *United States v. Dhavale*, No. 19-MJ-00092, 2020 WL 1935544, at *6 (D.D.C. Apr. 21, 2020) (granting temporary pretrial release and noting "the government does not contest that defendant suffers from prediabetes and hypertension, which puts him at higher risk for more severe, debilitating illness from COVID-19"). This is particularly true combined with comorbidities. *See United States v. Readus*, No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (explaining that courts have found the "combination of prediabetes and obesity have been sufficient to warrant release").

Cotton was diagnosed with prediabetes in October 2018. (Ex. 4, Med. Problems List.) At that time, he measured 6.0 on a "A1c" reading, a test that measures average blood sugar levels for the past two to three months. A score within the range of 5.7 to 6.4 places someone in the high-risk category for developing diabetes. *See* Mayo Clinic, *A1C Test Description*, https://www.mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643. If a person measures over 6.4, then he is diagnosed as diabetic. *Id.* Since October 2018, Cotton's A1c measurement has continued to rise. In March 2019, he tested at an A1c of 6.1, and in February 2020, he tested at an A1c of 6.3, just shy of the score for diabetes. This progression puts him at further risk, especially in combination with his asthma and obesity.

*Four: Asthma.* The Center for Disease Control ("CDC") states that "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19. COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease." CDC.gov, *Coronavirus Disease 2019, People with Asthma,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. There are generally four categories of asthma: mild intermittent, mild persistent, moderate persistent, and severe persistent. *See United States v. Collin*, No. 17-20360, ECF No. 104, PgID 654 (E.D. Mich. May 7, 2020). "Mild persistent" asthma

10

occurs when a person has symptoms "three to six times per week," whereas "moderate persistent asthma" occurs when a person has daily symptoms and the asthma affects the person's activity more than two times per week. *See* WebMD, *What are the categories of asthma?*, https://www.webmd.com/asthma/qa/what-are-the-categories-of-asthma.

Although Cotton's BOP records do not explicitly list what level his asthma is at, by the rubric discussed above, Cotton's asthma is best viewed as at least "moderate." He is prescribed *daily* use of Mometasone Furoate, a corticosteroid inhaler supposed to preemptively stop asthma attacks. (Ex. 5, Med. R., 2/11/2020.) Nevertheless, he *additionally* uses an albuterol "rescue" inhaler twice per week. This suggests serious asthma, as using this type of "rescue" inhaler *more* than twice per week would be a sign of unstable asthma warranting further medication. Cleveland Clinic, Bronchodilators & Asthma, https://my.clevelandclinic.org/health/treatments/17575-bronchodilators--asthma. Cotton's asthma should be viewed as a risk factor for severe complications from COVID-19. *See Howard*, 2020 WL 2615509, at *3 (granting release and explaining "[t]he CDC states that COVID-19 can cause an asthma attack that can lead to pneumonia and serious illness").

***Five: Age.*** Cotton's age also puts him at risk. He is 64 years old, one year below the cutoff age of 65 that the CDC recognizes as "at risk" for severe illness

11

from COVID-19. However, the experts in the case before Judge Parker opined that the CDC's list is "incomplete" because people "over the age of 50" also "face a higher risk of experiencing severe COVID-19 outcomes." *Cameron*, 2020 WL 2569868, at *5. Thus, Cotton's age is an additional risk factor, especially when considered in combination with his other serious health problems.

Cotton's age and health conditions—obesity, prediabetes, hyperlipidemia, and asthma—put him at high risk to COVID-19 illness as a result of his current incarceration. As this Court explained in *Loyd v. United States*, No. CR 15-20394-1, 2020 WL 2572275, at *3 (E.D. Mich. May 21, 2020), even if these "conditions do not independently and perfectly fit the definition of severity, as outlined by the CDC, all of his conditions compounded still place [the movant] in a much more vulnerable position than a healthy person, if he were to get COVID-19." Thus, this Court should find that extraordinary and compelling reasons exist for his release.

V. **Release is Consistent with the § 3555(a) Factors**

This Court also should consider the other § 3553(a) factors, which favor release. Cotton is not a danger if released early. Cotton is a military veteran, serving from 1973 to 1975, and being discharged under honorable conditions. PSR ¶ 52. He earned a National Defense Service Medal for his service. *Id.* After his discharged, he earned some college education. PSR ¶¶ 58. He has long worked in construction.

12

He supported himself before and during this case with his own construction business, supplemented with disability benefits from the Veterans Administration. PSR ¶ 56.

Cotton has no violent crimes in his history. PSR ¶¶ 32–36. His criminal history score was zero at sentencing. His criminal history before this case dates back to 2002, nearly 20 years ago. It consists of probationary or short jail sentences for forgery, cashing bad checks, driving on a suspended license, and (at age 21) misdemeanor disorderly conduct. None of this history suggests he will be a danger to the community if released early from this sentence.

Notably, Cotton's advisory guidelines range, apart from the mandatory minimum, was just 41 to 51 months. PSR ¶ 62. And in fact, the presentence report writer remarked that, in terms of seriousness of the offense and deterrence, the Court may wish to consider whether those sentencing goals "may be adequately achieved by a sentence less than the applicable sentencing guideline range." PSR ¶¶ 81, 82. He also noted that Cotton "appears to be capable of being deterred from further criminal conduct." PSR ¶ 82. Cotton has now served nearly two years, or roughly 44% of his term, when good-time credit is taken into account.

Cotton maintains a close relationship with his daughter, LaToya Williams, who wrote in support of him at his sentencing. *See* R. 350-2, Letter from LaToya

13

Williams, PgID 1940. Counsel has been in contact with Ms. Williams, who expressed support for her father and has a home available for him on his release.

The attached progress report from January 2020 reveals a model inmate. (Ex. 1, Progress Report.) Cotton has taken classes on managing diabetes, counseling for veterans, parenting classes, employment skills, and re-entry. (*Id.*) He has participated in the "Veteran's Re-entry Program" from July 2018 until now, for nearly two years. (Ex. 2, BOP Docs., at 2.) He has no disciplinary history. (*Id.* at 3.) This history is consistent with Cotton's compliance on bond for over two years. Even under the BOP's PATTERN score, which has been criticized as biased against racial minorities, Cotton's risk score is "minimum." (*Id.* at 1.)

If released, Cotton will be placed on supervised release, and the probation department will be able to visit his home, monitor his travel and employment, and supervise his compliance with drug treatment. There is no meaningful reason to believe Cotton would act any differently on supervised release than he did on pretrial release. In fact, his conduct in prison confirms he is ready to comply with the law.

## **Conclusion**

Elliott Cotton respectfully requests compassionate release.

                                                 Respectfully Submitted,

                                                 FEDERAL DEFENDER OFFICE

                                               s/Benton C. Martin
                                               Benton_Martin@fd.org
                                               Attorney for Elliott Cotton
                                               613 Abbott St., Suite 500
                                               Detroit, MI 48226
                                               Phone: 313-967-5832

Dated: June 11, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Cr. No. 16-20222

        v.        District Judge Arthur J. Tarnow

ELLIOTT COTTON,

        Defendant.
_____/

## **CERTIFICATE OF SERVICE**

    I certify that on June 11, 2020, I filed the foregoing paper with the through the court's electronic docketing system, which will send notification to opposing counsel of record.

                      */s/Benton C. Martin*