UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                Cr. No. 16-20222

        v.                          District Judge Arthur J. Tarnow

ELLIOTT COTTON,

        Defendant.
        _____/

**RESPONSE BRIEF
IN SUPPORT OF PETITION FOR COMPASSIONATE RELEASE**

The government's response rehashes many arguments—about the adequacy of the BOP's response to COVID-19 and whether release is "consistent with" the Sentencing Commission's policy statements—that this Court has repeatedly rejected in this case. *See Segars v. United States*, No. CR 16-20222-3, 2020 WL 3172734, at *3 (E.D. Mich. June 15, 2020); *Snell v. United States*, No. CR 16-20222-6, 2020 WL 2850038, at *3 (E.D. Mich. June 2, 2020); *Howard v. United States*, No. 16-CR-20222-2, 2020 WL 2615509, at *2 (E.D. Mich. May 22, 2020); *Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020).

But three points warrant reply to the government's opposition to Elliott Cotton's motion for compassionate release.

1

### 1. This Court need not dismiss Cotton's motion.

The government argues that *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *5 (6th Cir. June 2, 2020), requires dismissal of Cotton's motion. (R. 437, Gov. Resp., PgID 3770–71.) That is not correct. Although the Sixth Circuit approved of a "dismissal without prejudice" procedure for motions filed before the 30-day deadline lapsed, it did not mandate that approach. Rather, it expressed a concern, based on judicial policy reasons, of "reviewing stale motions." *Id.* And that concern is not present here. Cotton asked the warden for compassionate release on May 25, 2020, so 30 days will have lapsed on June 25, 2020, just next week. The government has not presented any argument that a week delay will somehow render stale the information in Cotton's briefing here.

### 2. "Extraordinary and compelling" reasons exist for release

The government argues that, because there are no confirmed COVID-19 cases at FCI Morgantown, Cotton's "risk of infection is attenuated." (R. 437, Gov. Resp., PgID 3773.) But yesterday, this Court confirmed the ongoing danger at Morgantown in *Segars*, 2020 WL 3172734, at *3. In particular, as described in *United States v. Agomuoh*, No. 16-20196, 2020 WL 2526113, at *2–3 (E.D. Mich. May 18, 2020), and not disputed by the government, prisoners are "sleeping within ten feet of each

2

other" and "eating elbow to elbow." *Id.* "There's no medical treatment after 5:00 PM." *Id.* There is "one doctor on staff with a handful of nurses." *Id.*

This Court concluded: "Considering the number of infected people [the movant] is unknowingly in contact with, continuing to incarcerate him under these conditions could be a lethal decision. The Court refuses to join FCI Morgantown in its ignorance of a deadly virus hidden in plain sight." *Segars*, 2020 WL 3172734, at *3. The same is true of Cotton.

In terms of Cotton's medical conditions, the government argues that Cotton's asthma is "mild" and not "moderate" or "severe," and that Cotton is not receiving treatment for COPD in prison. (R. 437, Gov. Resp., PgID 3775–77.)

But this description of Cotton's medical conditions is incomplete. Cotton's prison records show he suffers hyperlipidemia, glaucoma, myopia, asthma, gout, swelling, prediabetes, and obesity. (Ex. 4 to Cotton's Suppl.) As described in his presentence report, he also has a history of chronic kidney disease. PSR ¶ 47. His conditions were severe enough that he received disability benefits from the Veterans Administration. PSR ¶ 59. His obesity, hyperlipidemia, asthma, and prediabetes in particular put him at risk of COVID-19. He also is just one year below the age at which the CDC says people are at high risk from COVID-19.

Moreover, Cotton's asthma appears more significant than the government suggests. He takes daily medication for asthma and additionally has an "emergency" inhaler that he uses regularly. His asthma has been a well-documented problem since the time of sentencing. PSR ¶ 47.

This Court should find that the combination of Cotton's health problems and the conditions at FCI Morgantown represent an extraordinary and compelling reason for release.

### 3. The government's analysis of Cotton's danger to the community is unpersuasive.

The government also argues that Cotton is a danger to the community if released, relying primarily on the nature of the underlying offense. (R. 437, Gov. Resp., PgID 3778–80.) But the government does not acknowledge that this Court has released four of Cotton's codefendants, convicted of involvement in the same drug conspiracy. Nor does it dispute that Cotton's role in the conspiracy was substantially more minimal than that of codefendants Ronald Miller and Ramel Howard, who were already released by this Court.

As this Court discussed most recently with codefendant Ronald Segars, the "crimes were serious, but the quality of his time in prison has shown that he has the educational and correctional tools to live a life apart from crime." *Segars*, 2020 WL 3172734, at *4. The same is true of Cotton. He has no disciplinary infractions in

4

custody and engaged in significant programming in prison, including re-entry classes tailored to military veterans.

The government argues, without basis, that Cotton is "unrepentant" and "there is little reason to believe that he will abide by the law if released." (R. 437, Gov. Resp., PgID 3779.) But this argument ignores several facts. This was Cotton's first conviction in more than 15 years, his first prison term, his federal conviction, and his first conviction for any type of drug offense. He entered a timely guilty plea, and would have been safety valve eligible if he had proffered. He had a criminal history score of zero. Cotton complied with bond conditions for more than two years, and he will be placed on supervised released if released by this Court. His age and health conditions give him substantial reasons to comply with supervision rather than jeopardize his safety by risking violating his terms of supervision. He also has supportive family willing and able to support his re-entry. This Court should not hesitate to order his compassionate release.

## **Conclusion**

Elliott Cotton respectfully requests compassionate release.

                          Respectfully Submitted,

                          FEDERAL DEFENDER OFFICE

                          s/Benton C. Martin
                          Benton_Martin@fd.org
                          Attorney for Elliott Cotton
                          613 Abbott St., Suite 500
                          Detroit, MI 48226
                          Phone: 313-967-5832

Dated: June 16, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Cr. No. 16-20222

        v.        District Judge Arthur J. Tarnow

ELLIOTT COTTON,

        Defendant.
_____/

## **CERTIFICATE OF SERVICE**

    I certify that on June 16, 2020, I filed the foregoing paper with the through the court's electronic docketing system, which will send notification to opposing counsel of record.

                          */s/Benton C. Martin*