UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELLIOT SANFORD COTTON,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

Criminal Case No. 16-20222-8

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER GRANTING PETITIONER'S MOTION FOR COMPASSIONATE RELEASE [439]**

Elliot Cotton petitioned the Court for his immediate compassionate release from his incarceration at Federal Correctional Institution ("FCI") Morgantown, where he is in the custody of the Bureau of Prisons ("BOP"). (ECF No. 429-1). On June 5, 2020, the Court appointed counsel to represent Cotton and ordered supplemental briefing. (ECF No. 429). On June 11, 2020, the parties filed concurrent briefs. (ECF No. 437, 439). On June 16, 2020, the parties filed concurrent reply briefs. (ECF No. 441, 442). The Court held a hearing on June 17, 2020. For the reasons stated below, and on the record, the Court **GRANTS** Cotton's Motion for Compassionate Release [439].

**FACTUAL BACKGROUND**

On June 13, 2018, the Court sentenced Ramel Cotton to 60 months (5 years) in the custody of the Bureau of Prisons ("BOP"), for his violations of 21 U.S.C. § 841(b)(1)(B) & (a)(1), possession with intent to distribute 500 Grams or More of

Cocaine and 18 U.S.C. § 1956(a)(1)(A)(i), conspiracy to launder money. (ECF No. 361).

Mr. Cotton is 64 years old. He seeks release due to his obesity, hyperlipidemia, pre-diabetes, asthma and age, which place him at a high risk for complications from COVID-19. (ECF No. 439-5). On May 25, 2020, due to the COVID-19 pandemic, Cotton asked for compassionate release from his warden. (ECF No. 439-4). There is no evidence of a response.

## ANALYSIS

The compassionate release statute states the following in relevant part.

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > **(i)** extraordinary and compelling reasons warrant such a reduction.

18 U.S.C.A. § 3582.

Because 30 days has lapsed since the warden's receipt of Cotton's request for compassionate release, there is no dispute that Cotton has exhausted his administrative remedies. *See United States v. Alam*, No. 20-1298, 2020 WL 2845694 (6th Cir. June 2,

2020). The Court thus has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether Cotton poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors. *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *4 (E.D. Mich. May 7, 2020).

1. Extraordinary and Compelling Reasons for Release

In order to determine if extraordinary and compelling reasons exist to release Cotton, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement recites the following:

> **1. Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> **(A) Medical Condition of the Defendant.--**
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> **(ii)** The defendant is--
> **(I)** suffering from a serious physical or medical condition,
> **(II)** suffering from a serious functional or cognitive impairment, or
> **(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover
> [. . .]
> **(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and

>compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13

Here, Cotton has presented "Other Reasons" in combination with his serious medical conditions, to warrant compassionate release. While the COVID-19 pandemic is devastating in every region it invades, prison populations are subject to heightened vulnerability. *See, e.g.*, Danielle Ivory, *"We Are Not a Hospital": A Prison Braces for the Coronavirus*, N.Y. Times (March 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html (citing densely populated living conditions, shortage of masks, soap, and hand sanitizer, and the inability to routinely disinfect surfaces and maintain safe distances between inmates and guards as reasons prisoners are at increased risk of infection); *See, e.g.*, Courtney Bublé, *Federal Prisons Pose 'Imminent Danger' in Spreading COVID-19, Union Says*, Government Executive (April 6, 2020), https://www.govexec.com/oversight/2020/04/federal-prisons-pose-imminent-danger-spreading-covid-19-union-says/164390/ (detailing a prison workers' union complaint to OSHA complaining of "imminent danger" due to the BOP's failure to follow national safety guidelines).

Furthermore, the persuasive precedent for granting compassionate release under the current circumstances is overwhelming. *United States v Andre Williams*, Case No. 04-cr-95/MCR, at *7 (N.D. Fla. April 1, 2020) ("[A]n outbreak of COVID-19 in Williams' facility would likely have fatal consequences for him. Based on these facts,

the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence."); *see also United States v. Teresa Ann Gonzalez,* No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020); *United States v. Campagna*, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020); *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020), at *2.

Cotton argues that his underlying conditions warrants similar treatment. Specifically, he seeks release due to his obesity, hyperlipidemia, pre-diabetes, asthma and age. First, the Center for Disease Control ("CDC") states that people with obesity, recently re-defined as a body mass index ("BMI") of at least 30, have a higher risk of complications from COVID-19 due to breathing problems. *People of any age with certain Medical Conditions, Centers for Disease Control and Prevention,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-highim-risk.html *(last visited June 25, 2020).* In fact, obesity is among the risk factors with the strongest and most consistent evidence of increasing a person's risk of severe illness from COVID-19. *Evidence used to update list of underlying medical conditions that increase a person's risk of severe illness from COVID-19*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited June 25, 2020). As of February 11, 2020, Cotton had a BMI of 32.3, squarely placing him in this risk category. (ECF No. 439-6, PageID. 4001).

Second, the CDC has recognized hyperlipidemia, along with other chronic diseases, as prevalent in patients hospitalized due to COVID-19. *Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/mmwr/volumes/69/wr/mm6913e2.htm (last visited June 25, 2020).

Third, Cotton is pre-diabetic. The CDC states that people with Type 2 diabetes are vulnerable because it increases your risk of severe illness from COVID-19. *People of any age with certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-highim-risk.html (last visited June 25, 2020). Although, Cotton is not diabetic, his hemoglobin A1C levels are dangerously approaching the diabetic threshold. A person is diagnosed with diabetes with a A1C level of 6.5 or higher on two separate occasions. *A1C test*, MAYO CLINIC, https://www.mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643 (last visited June 25, 2020). Cotton's last measured A1C level was 6.3. (ECF No. 439-6, PageID. 4001). This blood sugar level, especially in combination with his other diseases, is high enough to make him vulnerable to illness as a result of COVID-19.

Fourth, Cotton suffers from asthma. The CDC states that COVID-19 can cause an asthma attack and serious illness in patients with moderate to severe asthma. *People of any age with certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND

PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-highim-risk.html (last visited June 25, 2020). The Court finds that Cotton's prescribed daily use of his inhaler is consistent with medical evidence of moderate persistent asthma. (ECF No. 439-6, PageID. 4003); *Bronchodilators & Asthma*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/treatments/17575-bronchodilators--asthma (last visited June 25, 2020); *Classification of Asthma*, UNIVERSITY OF MICHIGAN HEALTH SYSTEM, https://www.uofmhealth.org/health-library/hw161158 (last visited June 25, 2020).

In opposition, the Government argues that Cotton's conditions not severe enough and too common to place him at risk of COVID-19. The Government's arguments about medical minutiae, while noted by the Court, are dismissed as unpersuasive. Even if, assuming arguendo, Cotton's conditions do not independently and perfectly fit the definition of severity, as outlined by the CDC, all of his conditions compounded still place Cotton in a much more vulnerable position than a healthy person if he were to get COVID-19, especially considering his age.

Furthermore, the Court's concern for Cotton's safety is not dissuaded by the fact that FCI Morgantown has no reported cases of COVID-19. The prison's report of zero confirmed cases is more likely a result of a lack of testing than a lack of the virus' presence in the prison. Especially since the county where the prison is located is currently reporting 148 confirmed cases and 5 deaths, the Court is concerned that inmates and staff members are interacting with one another as normal and blissfully

unaware of the virus spreading throughout the prison. *Coronavirus Disease 2019*, WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, https://dhhr.wv.gov/COVID-19/Pages/default.aspx (last visited June 25, 2020). Another court in our district recently found the following about the conditions at FCI Morgantown:

> They're sleeping within ten feet of each other. They're eating elbow to elbow . . . There's no medical treatment after 5:00 PM. He would have to wait until the next day. There's usually—he reports only one doctor on staff with a handful of nurses for the population of I believe almost 700. (Tr. Pgs. 5-6.) The United States did not dispute this description of current conditions at FCI Morgantown. There are currently no confirmed cases of COVID-19 at FCI Morgantown, though it is not clear whether the facility is conducting widespread COVID-19 tests for inmates or staff.

*United States v. Agomuoh*, No. 16-20196, 2020 WL 2526113, at *2–3 (E.D. Mich. May 18, 2020). During the Court's hearing, Cotton corroborated many of these findings. Considering the number of infected people Cotton is unknowingly in contact with, continuing to incarcerate him under these conditions could be a lethal decision. The Court refuses to join FCI Morgantown in its ignorance of a deadly virus hidden in plain sight. Therefore, extraordinary and compelling reasons exist for Cotton's immediate compassionate release.

  2. <u>Danger to the Community</u>

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The Court finds that Cotton's conduct

in prison indicates that he presents a low risk of recidivism. Cotton's disciplinary history is spotless, and he has been identified as a minimum recidivism risk by the Bureau of Prisons ("BOP"). (ECF No. 439-3, PageID. 3993). Furthermore, Cotton has also demonstrated his desire and ability to distance himself from crime by completing several courses, including drug education, job skills classes, and a Veteran re-entry program while in prison. (*Id.*; ECF No. 439-2, PageID. 3990-91). Cotton has also maintained ties to his family while in prison and will reside with his daughter upon release. He is also planning on taking a test to become a construction manager. Considering that Cotton has taken responsibility for his crimes, has resolved to stay away from crime and his family is willing to take him in and support his reentry, the Court sees no reason to oppose his release.

3. Section 3553(a) Factors

A district court contemplating a motion for compassionate release must consider the § 3553(a) sentencing factors. Those are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;
**(4)** the kinds of sentence and the sentencing range established for--
**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

18 U.S.C.A. § 3553.

The Court's consideration of these factors is explicated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the June 17, 2020 hearing. Cotton's crimes were serious, but the quality of his time in prison has shown that he has the educational and correctional tools to live a life apart from crime. Finally, the potential danger of Cotton's medical conditions outweighs any marginal benefit he would receive from finishing his remaining time in prison. Compassionate release is therefore in line with the § 3553(a) factors.

## CONCLUSION

**IT IS ORDERED** that Petitioner's Motion for Compassion Release [439] is **GRANTED**.

**IT IS FURTHER ORDERED** that Cotton be **IMMEDIATELY RELEASED** to begin his 3-year term of **SUPERVISED RELEASE**, as outlined by the June 18, 2018 Judgment (ECF No. 361).

**SO ORDERED**.

Dated: June 26, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge